IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:07cr07-MHT |
| | ) | |
| KENYATTA THOMAS | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

**COMES NOW** the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files its response to the Defendant's Motion to Suppress, as follows:

## FACTS

On Friday, December 22, 2006, the defendant went into the Regions Bank, stood in line for a few moments, then approached the victim teller and presented her a handwritten note that read, "This is a robbery I have a gun will use be quiet." The defendant did not speak during the robbery. The victim teller handed the defendant $390.00 and the defendant departed the bank. Defendant then got into a beige, four-door, Pontiac and left the premises. Witnesses saw the defendant's vehicle as it left the bank. Later investigation led law enforcement to the defendant's mother's house at 41001-A Williams Street, Montgomery. There officers spoke with the defendant's mother, Roberta Thomas. Ms. Thomas explained to the officers that the beige, four-door, Pontiac was hers and that her son Kenyatta Thomas drives the car. She further stated that her son has a .45 caliber handgun. Ms. Thomas reported that on December 22, 2006, her son stated that he needed to get some money to pay the bills before the gas and power were turned off.

According to Ms. Thomas, on the night of December 22, 2006, (after the bank robbery) the defendant was acting unusual. He began walking around the yard with a shotgun. The police were called. When the police arrived, they arrested Thomas after discovering that he had an outstanding warrant. Early on December 23, 2006, Ms. Thomas bonded the defendant out of jail. According to Ms. Thomas, her son continued to act strangely, so she called the police. The police took the defendant to Baptist Hospital. The defendant was eventually taken to Meadhaven Emotional Health Program. While interviewing Ms. Thomas, officers showed her a picture of the suspect taken from the bank robbery. According to the officers, Ms. Thomas dropped her head and told them that the individual in the picture looked very much like her son. Ms. Thomas then stated that she believed that might have been why her son was acting unusual.

On December 26, 2006, the defendant was interviewed by Montgomery Police Officers. Prior to such interview, the defendant was advised of his Miranda Rights and given a Waiver of Miranda Form. Thomas read the Waiver of Miranda Form out loud to the officers. After reading the form, Thomas stated he understood the form and signed it. The defendant then told officers that on the morning of December 22, 2006, he took a pill that he got from a friend. According to Thomas, he thought the pill was a pain pill, but soon after taking the pill, began to feel disoriented and only remembers portions of the bank robbery. Thomas said that he was driving by the bank and decided to rob the bank at the last minute because he was in desperate need of money to pay his mother's electric and gas bills. Thomas explained that his mother was in poor health and that he was worried about her having no electricity or heat. He further stated that after the bank robbery, he saw himself on the news and knew that he had made a big mistake and had ruined his life.

Shortly after the interview began, the defendant began to have an allergic reaction, so the officers discontinued the interview until January 8, 2007. On January 8, 2007, the defendant was again advised of his rights. Thomas read and signed the Waiver of Rights Form. Thomas was shown a copy of the demand note. Thomas admitted that he wrote the note in his bedroom of his mother's residence. He further admitted to using the note to rob the bank. This interview was audio and video recorded.

Both the defendant and the government have employed experts to examine the defendant. The defendant hired Dr. David C. Ghostley, and the government hired Dr. Lori Butts. According to Dr. Ghostley's report, he evaluated the defendant only for his ability to stand trial and his mental state at the time of the alleged offense. Dr. Ghostley gave no opinion on whether the defendant had the ability to knowingly, intelligently and voluntarily waive his Miranda Rights. Moreover, Dr. Ghostley found that the defendant was competent to stand trial and that "it is not likely that Kenyatta's ability to appreciate the wrongfulness of his behavior was impaired significantly." After examining the defendant, Dr. Butts found that the defendant "provided a knowing, intelligent, and voluntary waiver of his Miranda rights."

## ARGUMENT

**A.     Defendant's Miranda Waiver was Made Voluntarily**

Whether a suspect voluntarily waived the right to remain silent requires a two part inquiry; first, did the defendant waive his rights voluntarily, in that the waiver was the product of a free and deliberate choice and not the result of intimidation, coercion, or deception; second, the defendant must have been aware of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Moran v. Burbine*, 475 U.S. 412 (1986). In the case

at bar, the defendant was initially interviewed on December 26, 2006.  Prior to beginning the interview, the defendant read the Miranda Waiver Form out loud, to the police.  He stated he understood the Waiver Form, signed it and proceeded with the interview.  During the interview, he admitted to robbing the bank and then had an allergic reaction.  The police did not continue with the questions, nor did they attempt to get more information while the defendant was having his reaction.  The police took the defendant to the hospital and postponed the interview.

On January 8, 2007, once the defendant had recovered from his allergic reaction, the police again interviewed the defendant.  This interview was audio and video recorded.  On the video, the police officers carefully and methodically explained the defendant's rights to him.  The police officers further explained that he could waive those rights and speak to the police.  The video makes clear that the police in no way coerced, intimidated, or deceived the defendant into making a confession.[1]

Defendant argues that the police took advantage of the defendant's mental limitations and psychiatric problems in order to secure a confession. However, as the tape will demonstrate, the police were actually quite cautious and methodical when explaining his Miranda rights as well as his right to waive Miranda.  Thus, no one coerced, deceived or intimidated the defendant into confessing to the bank robbery.

Defendant further asserts that, based on conversations with the defendant's mother, the police should have recognized "that Mr. Thomas is/was not able to understand or comprehend a written document outlining his constitutional rights and protections."  (Doc. 17, p. 3) However,

---

[1] The government intends to play at least a portion of the video tape during the suppression hearing.

even if the defendant suffered from some mental illness, which the government does not concede, the fact that a defendant is suffering from a mental illness or depression does not render a confession involuntary unless there is official exploitation of the suspect's condition. *See, Coleman v. Singletary*, 30 F.3d 1420 (11th Cir. 1994); *Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). While the government will concede that the officers had knowledge that the defendant had some emotional problems, common sense would dictate that many people would have some emotional issues after committing a violent crime. Those emotional issues may simply be evidence of consciousness of guilt, not evidence of mental illness.

**B.     Defendant's Waiver of Miranda was Given Knowingly and Intelligently**

The defendant next contends that he did not knowingly and intelligently waive his Miranda Rights. To determine whether a confession was given following a knowing and intelligent waiver of Fifth Amendment rights, courts focus on suspects' comprehension of their rights. *Blanco v. Singletary*, 943 F.2d 1477, 1509 (11th Cir. 1991). When the police interviewed the defendant on December 26, 2006, the defendant read the Waiver of Miranda Form out loud to the police officers. Officers asked the defendant about his educational background. The defendant replied that he was a high school graduate and could read and write. The defendant then acknowledged that he understood his rights.

When the police continued the interview with the defendant on January 8, 2007, the defendant was again given his Miranda Rights. He again read the Miranda Waiver Form and acknowledged that he understood it. He then confessed for the second time. Clearly, the

defendant understood and comprehended the Waiver of Miranda form.[2]

## CONCLUSION

Based on the foregoing, the defendant's confession should not be suppressed and the Defendant's Motion to Suppress should be denied.

Respectfully submitted this the 11th day of July, 2007.

<div style="margin-left: 3em;">

LEURA G. CANARY

UNITED STATES ATTORNEY
/s/A. Clark Morris
A. CLARK MORRIS
Assistant United States Attorney
131 Clayton Street
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: clark.morris@usdoj.gov

</div>

---

[2] The defendant's understanding of the Miranda Waiver Form will become more evident upon the Court viewing the portion of the video tape in which the police officers explain the Waiver Form to the defendant.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:07cr07-MHT |
| | ) | |
| KENYATTA THOMAS | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kevin Butler, Esq.

        Respectfully submitted,
        LEURA G. CANARY
        UNITED STATES ATTORNEY

        /s/A. Clark Morris
        A. CLARK MORRIS
        Assistant United States Attorney
        131 Clayton Street
        Montgomery, AL 36104
        Phone: (334) 223-7280
        Fax: (334) 223-7135
        E-mail: clark.morris@usdoj.gov